UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18CR00348 AGF (PLC) |
| | ) | |
| VERNON JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

This matter is before the Court on the Defendant's pretrial motions. Defendant, Vernon Johnson, is charged in a superseding indictment with one count of being a felon in possession of a firearm, one count of being a felon in possession of ammunition, and two counts of tampering with a witness. (ECF No. 46.) All pretrial motions were referred to United States Magistrate Judge Patricia L. Cohen under 28 U.S.C. § 636(b). Defendant filed an Amended Motion to Suppress Evidence and Motion to Compel the Government to Provide Defendant with Unredacted Discovery.[1] (ECF No. 52.)

In his motion to suppress evidence, Defendant alleges that (i) his Fourth Amendment rights were violated when officers used a key provided by the landlord to open the door and enter the apartment leased by his girlfriend, Ashley Puryear, where

---

[1] Defendant did not address his motion to compel at the evidentiary hearing or in his post-hearing briefs, and did not file objections to that portion of the Magistrate Judge's Order and Recommendation denying the motion to compel. The Court therefore assumes that Defendant has abandoned the motion to compel, especially in light of the disclosures reflected in the Government's Supplemental Response in Opposition (ECF No. 560), and will not further address the matter.

Defendant was also staying; (ii) that the two firearms obtained from a search of a bedroom nightstand shortly thereafter should be suppressed as the officers had neither a warrant nor consent for the search; and (iii) that ammunition and other evidence obtained as a result of a protective sweep of the apartment, the arrest of Defendant, and the firearms should all be suppressed as the fruit of the unlawful entry and search. The United States responded to the motion, asserting that exigent circumstances supported the warrantless entry into the apartment, as it was reasonable for the officers to believe, based upon a 911 call of a woman yelling or screaming, and a second call shortly thereafter of shots fired, that Ms. Puryear or her child might be in danger. The government further asserted that following their lawful entry into the apartment to confirm the safety of the occupants, the officers were justified in conducting a protective sweep, during which time they observed evidence in plain sight, including ammunition, a spent shell casing, bullet holes in the walls and a doorway, and a bedroom door that appeared to have been broken into. This evidence, together with the interview of Ms. Puryear and other evidence obtained during their investigation, provided probable cause to arrest Defendant. Finally, the government asserts that Ms. Puryear provided consent to reenter the apartment and obtain the firearms from the right-hand nightstand.

On February 11, 2019, Magistrate Judge Cohen held an evidentiary hearing, at which the government provided the testimony of the landlord, Jadiene Davidson, and Sgt. Kelly Fisher and Officer Mary Edmond, and ATF Special Agent Jeff Thayer. Evidence was presented that at the time of the hearing Officer Klein – who authored the police report – was deceased. Defendant called Ms. Puryear, who repeatedly refused to answer

questions on cross-examination, purportedly – and inappropriately – under the Fifth Amendment. Numerous exhibits were also introduced, including photographs of the apartment as it appeared when the officers first entered, recordings of the communications with police dispatch, and tapes of later telephone calls between Defendant and Ms. Puryear. Following the filing of a transcript of the hearing, the parties filed post-hearing briefs.

On June 11, 2019, the Magistrate Judge issued her Order and Report and Recommendation (the "R&R") in which she concluded that exigent circumstances justified the warrantless entry into the apartment, and that any delay between arrival at the apartment building and entry into the apartment was reasonable under the circumstances. The Magistrate Judge further concluded that Ms. Puryear consented to the entry into her apartment, and the seizure of the firearms from the nightstand. As Defendant did not challenge either that the ammunition seized was in plain view or that there was probable cause to arrest Defendant, the Magistrate Judge did not further address those issues. (ECF No. 83.) Defendant thereafter waived his rights under the Speedy Trial Act, and requested a continuance of the trial setting, which is now set for September 16, 2019.

Defendant filed objections (ECF No. 90) to the R&R, asserting that (i) the landlord could not lawfully authorize entry into the apartment, and exigent circumstances did not exist, as demonstrated by the officers' delay in making entry; and (ii) the officers did not have consent to re-enter the apartment and seize the firearms from the nightstand. Although Defendant states he is objecting to the Magistrate Judge's findings of fact and

3

legal conclusions, Defendant does not identify any specific factual findings in the R&R to which he objects. To the contrary, Defendant states that "[a]s the Court did an artful job reciting the facts of the case," he will not restate them, and instead incorporates the facts stated in the R&R. (ECF No. 90, at 1.) The Government filed a generic response to the objections, asserting that the Magistrate Judge's "findings of fact and conclusions of law are sound and supported by the evidence," but otherwise providing no additional discussion or legal reasoning.

When a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the court is required to "'make a de novo review determination of those portions of the record or specified proposed findings to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).

The Court conducted a *de novo* review of the motion to suppress, including a review of the transcript and the exhibits introduced at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings and correctly analyzed the issues.

**Additional Facts**

To the facts recited in the R&R, which the Court adopts and incorporates, the Court adds the following facts for further clarification. As reflected on Govt. Ex. 25,[2] at 7:53 a.m., the police received the first relevant call, to 911. The caller identified herself

---

[2] At Defendant's request the entire recording was admitted into the record (ECF No. 67, at 98), and the Court has listened to the entire recording.

as a neighbor, and said she heard screaming – someone saying, "Don't do that" – and a lot of loud noises. She clearly identified the apartment as number 605. She further stated that it was a secure building, she identified her own apartment as 505, and said she would buzz the police in if they contacted her. (Govt. Ex. 25.) Officers responded to the call, but found no disturbance in apartment number 605.

At 8:29 a.m. the second call was received. A woman who identified herself as Ashley Puryear's friend said she was reporting an emergency at 1600 Locust. She said her best friend, Ashley, had just texted her saying, "I think I'm going to die. He's shooting inside the apartment." The caller advised her belief that Ashley was referring to shooting a gun, and that Ashley was in apartment 506. She said Ashley lived there with her boyfriend Vernon, and that Ashley had a four-month-old baby. She advised that Vernon's older sister said that he was bipolar. She said she called the police because Ashley couldn't do so herself. In further conversation, the caller confirmed that it was a secure building, that she did not know how to gain entry, and that she (the caller) could text Ashley and tell her to buzz the officers up. *Id.*

In response, Dispatch issued a call regarding 1600 Locust, apartment 506, which was identified as a secured building. The report stated that a third-party had provided information that the apartment's resident's child's father, who was bipolar, was firing shots in the home.

The prospect of a mix-up with respect to the apartment number related to the first call became clear when one of the officers who had responded to the first call contacted Dispatch. The officer advised that in response to the first call, they had gone to 1600

5

Locust and contacted the caller in apartment 505, who answered and let the police in. Per the caller's information, they investigated at apartment 605, and discovered no disturbance. The person in 605 said he or she did not hear any yelling or shots fired, and the officer stated that they concluded their investigation. The officer confirmed that the report in the first call identified apartment 605, not 506. *Id.*

Dispatch continued to have additional conversations with Ashley's friend, and advised that officers were on the way. Ashley's friend provided Ashley's telephone number, and advised that the text from Ashley had been received at 8:13 a.m. Dispatch tried calling Ashley's telephone number, but got no response. In the next communication with Ashley's friend, the friend advised that she had sent return texts to Ashley, but received no response. The friend confirmed Ashley's apartment number and telephone number. She also said Ashley worked at her own store, but usually didn't go to work until 1:00. In response to questions from Dispatch, the friend said she could not identify Ashley's car, because the boyfriend rents cars. This information was reported to the officers. *Id.*

While these calls were taking place, the officers were conducting the investigation detailed in the R&R, including meeting with the landlord, attempting to contact and find Ms. Puryear, and listening at the door of apartment 506. At the end of that investigation, the officers knocked on the door, and when there was no answer, opened the door with the landlord's key.

**Conclusions of Law**

For the reasons set forth more fully in the R&R, the Court finds that the officers' warrantless entry into the apartment was supported by exigent circumstances. The police had received a 911 call from a tenant, reporting that she heard a women screaming, but unbeknownst to the officers, the caller likely identified the wrong apartment. Approximately 30 minutes later, at 8:29, the police were advised by Ms. Puryear's friend that Ms. Puryear had sent her a text message at 8:13 a.m., in which Ms. Puryear stated that she was afraid she was going to die, and that her boyfriend was firing shots in the home. They also learned that Ms. Puryear had a baby that lived with her. In light of these facts, and the additional facts learned during the course of their investigation, which are detailed in the R&R, the government has met its burden. Viewed from an objective standard, exigent circumstances justified a warrantless entry and sweep of the apartment to assure the safety of the occupants, including Ms. Puryear and her child. *See, e.g., United States v. Scott,* 876 F.3d 1140, 1143-44 (8th Cir. 2017); *United States v. Janis*, 387 F.3d 682, 687-88 (8th Cir. 2004); *United States v. Jones*, 635 F.2d 1357, 1361-62 (8th Cir. 1980).

Defendant argues that the delay between the officers' arrival after the second call and the entry into the apartment, which was a delay of thirty minutes or less, belies the existence of exigent circumstances. Defendant contends that if this is the basis of the warrantless search, the police were required to immediately break down the door. For the reasons stated in the R&R, however, the Court agrees with the Magistrate Judge that "the delay was entirely reasonable under the circumstances and does not defeat

7

application of the exigent circumstances exception." R&R at 13 (citing cases). Before providing the key, the landlord first attempted, unsuccessfully, to contact Ms. Puryear and her emergency contact. The officers promptly and reasonably attempted to call Ms. Puryear on her phone and through her father, who was listed as the emergency contact; listened at her door while her telephone number was called; attempted to ascertain whether she was at home by checking for her vehicle and checking her business, which was just three blocks away; spoke briefly with one or more residents, one of whom reported hearing a shot; and knocked on the apartment door and received no answer. Under the circumstances, the officers' actions were reasonable. See *Jones*, 635 F.2d at 1362. The officers were not required to immediately break down the door of an apartment that reported shots fired in connection with what appeared to be a domestic dispute, without attempting to conduct a reasonable investigation, especially as the shooter was identified as perhaps having a bipolar condition, and the apartment was now quiet. The officers concluded as much investigation as they could on an immediate basis, and after being unable to locate Ms. Puryear, it was then reasonable for the officers to effect a soft, warrantless, entry into the apartment, using the landlord's key.[3]

Upon opening the door, Ms. Puryear voluntarily and willingly permitted herself to be guided out of the apartment. From that conduct, her demeanor, and the fact that she had initially texted her friend that she was in danger, the Court also finds that Ms.

---

[3] Defendant has not cited to any case law or evidence in the record suggesting that it would have been safer for either the officers or the occupants to have broken down the door, and the record contains no such evidence.

Puryear provided consent for the officers to enter and secure her apartment. *See* R&R at 14-15. The case law also supports that the officers were justified in conducting a warrantless sweep of the apartment, both to secure the child,[4] and to confirm that there were no other individuals present or other danger presented.[5] *Maryland v. Buie*, 794 U.S. 325, 327, 336 (1990); *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1006-07 (8t Cir. 2010). During the protective sweep, ammunition, shell casings, the broken door, and bullet holes were all in plain view. Again, Defendant does not contend otherwise. And there is no evidence whatsoever that upon entry the officers went beyond what was necessary for the protective sweep.

Based on all of the facts and circumstances, including what they could observe in plain view with respect to the condition of the apartment, the officers also had probable cause to arrest Defendant, who emerged from the bedroom, naked. Probable cause for the arrest was further confirmed by Ms. Puryear's statements to the officers in the hallway about what had occurred.

The Court further agrees with the Magistrate Judge that a reasonable officer under these facts would have believed that Ms. Puryear thereafter provided consent to enter the

---

[4] It is not clear from the record exactly when and how the child was removed from the apartment.

[5] Defendant does not independently challenge the authority of the officers to conduct a protective sweep in the context of a warrantless search based on exigent circumstances. Rather, Defendant's only challenge is that the entry into the apartment cannot be justified by exigent circumstances and that both the arrest and any evidence obtained upon entry into the apartment must therefore be suppressed as fruit of the poisonous tree. Having found that exigent circumstances justified the warrantless entry, Defendant's argument fails.

apartment and secure the firearms from the nightstand. Ms. Puryear had initiated the call for help, willingly permitted the police to enter the apartment, and voluntarily provided information regarding Defendant's conduct, including that he choked her, randomly fired shots into the apartment – notwithstanding that a child was present – and then broke down the door after she escaped into the child's room. Based on her response to the officer's question regarding the location of the firearms, the officers were reasonable in concluding that she had provided consent to search the nightstand and seize the guns. And she at no time objected to their actions.

In his objections, Defendant attempts to distinguish *United States v. Wasela*, 223 F.3d 656 (7th Cir. 2000), cited by the Magistrate Judge, claiming that here, unlike in *Wasela*, Ms. Puryear never called the police and did not let them into the apartment. But these distinctions have no merit. It is undisputed that Ms. Puryear called out for help the only way she could, through the text to her friend. And on these facts, she was not in a position to personally open the door for the officers, but plainly wanted their assistance in reaching safety.

For these reasons, and the reasons stated more fully in the R&R, the Court finds that Defendant's Fourth Amendment challenges lack merit, and his objections to the R&R will be overruled.

Accordingly,

**IT IS HEREBY ORDERED** that the Order and Report and Recommendation of United States Magistrate Judge [ECF No. 83] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Amended Motion to Suppress Evidence and Motion to Compel the Government to Provide Defendant with Unredacted Discovery [ECF No. 52] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's First Motion to Suppress Evidence and Motion to Compel the Government to Provide Defendant with Unredacted Discovery (Doc. NO. 32) is **DENIED as moot**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2019.