UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CR 00348 AGF |
| | ) | |
| VERNON JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT MOTION TO WITHDRAW GUILTY PLEA

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Jeffrey B. Jensen, and Linda Lane, Assistant United States Attorney for said District, and for its response in opposition to defendant, Vernon Johnson's, Motion to Withdraw Guilty Plea states as follows:

### I.      Procedural History

On April 25, 2018, a Federal Grand Jury returned a one-count indictment charging Vernon Johnson ("Defendant") with one count of being a felon in possession of one or more firearms, in violation of Title 18, United States Code Section 922(g).  Defendant was arrested on May 14, 2018.  Thereafter, the government provided discovery and disclosed its arguably suppressible evidence to Michelle Monahan, attorney for defendant.  On June 29, 2018, Jeffrey Goldfarb entered his appearance as attorney for the defendant and Michelle Monahan withdrew as attorney of record for Defendant.  On July 10, 2018 and August 8, 2018, Defendant filed a Motion for Extension of Filing Pretrial Motions. (DCD # 27, 29). Each motion was granted by the court.  On September 18, 2018, Defendant, through counsel, filed a combined Motion to

Suppress Evidence and a Motion to Compel.  (DCD # 32).  On October 12, 2018, the

government filed a response to the Motion to Suppress and Compel (DCD#38).  The Evidentiary

Hearing was scheduled for November 2, 2018.  Goldfarb subsequently requested multiple

continuances of the hearing. (DCD #40, 42).  The hearing was rescheduled for January 10, 2019.

(DCD #43). On January 8, 2019, Goldfarb filed an amended Motion to Suppress Evidence and

Motion to Compel. (DCD #51).  On January 9, 2019, Goldfarb appeared at the United States

Attorney's Office to review the government's evidence.  The government made the evidence

available for review by the defendant to which he declined through counsel. (DCD #56).

On January 11, 2019, at time of the Evidentiary Hearing, defendant requested a

continuance due to the unavailability of a defense witness. (DCD # 57).  The hearing was reset to

February 8, 2019. (DCD #58).  On February 11, 2019, the Evidentiary Hearing occurred. (DCD

#64). On March 29, 2019, a post hearing brief was filed by Goldfarb. (DCD #75). On June 11,

2019, the Report and Recommendations was filed by the court denying the defendant's motions.

(DCD #83).  On July 16, 2019, Goldfarb filed an objection to the Report and Recommendations.

(DCD #90).  On August 12, 2019, an Order adopting the Report and Recommendations was

entered by the District Court. (DCD #97).

On September 11, 2019, a Frye Hearing was scheduled for September 11, 2019. (DCD

#98).  At the hearing defendant indicated that he wanted time to discuss waiver of jury trial

amoungst other matters with his attorney. The hearing was rescheduled for September 13, 2019.

(103). On September 13, 2019, the defended pled guilty to felon in possession of a stolen firearm

and conspiracy to possess a firearm as a felon.  (DCD #112). At the change of plea hearing, the

Court established that his plea was knowing and voluntary. During the plea colloquy, Defendant

admitted that he understood all of his rights, was satisfied with the services his attorney had

provided, and admitted the factual basis for the plea and told this Court he was guilty of the charged offense.  The Court accepted Defendant's plea and scheduled sentencing for December 18, 2019. (DCD #115).  On March 4, 2020, a Motion to Withdraw Plea of Guilty was filed. (DCD #133).

## II.    FACTS

The evidentiary hearing established the following:

On February 21, 2018, St. Louis Metropolitan Police Department ("SLMPD") officers received a call at 7:53 a.m. for police help at 1600 Locust Street in the City of St. Louis located within the Eastern District of Missouri.  (Feb. 11, 2019, Hrg. Tr. 95:15-96:14)  An anonymous caller stated that she could hear a female screaming and believed the screams were coming from apartment 605. (Feb. 11, 2019, Hrg. Tr. 35; Tr. 65)  Officers Alex Klein and John Moton responded to the first call. (Feb. 11, 2019, Hrg. Tr. 35:25-36:1; Tr.96:10-11)   Upon arrival officers responded to apartment 605. (Feb. 11, 2019, Hrg. Tr. 96:17-18)  The occupant of apartment 605 stated that no one inside was in distress. (Feb. 11, 2019, Hrg. Tr. 96:19-20) Officers left the building.

Officers received another call for "shots fired" at 8:25 a.m. at 1600 Locust Street apartment 506. (Feb. 11, 2019, Hrg. Tr. 96:21-97:3; 100:7-8)  Officers were advised that the resident of apartment 506 child's father was shooting inside the apartment and that there was a small child inside the apartment**.** (Feb. 11, 2019, Hrg. Tr. 97)  Officers Alex Klein and John Moton were the first on scene in response to the second call. (Feb. 11, 2019, Hrg. Tr. 36)  Officers Edmond, Tawana Sims and Sergeants Fisher and Kevin Bentley also responded to the scene as the incident appeared to have escalated due to shots being fired. (Feb. 11, 2019, Hrg. Tr. 36)

Upon arrival officers convened in the leasing office. (Feb. 11, 2019, Hrg. Tr. 101)  Officers made several attempts to contact Ms. Puryear.  Dispatchers attempted to call Ms. Puryear and were unable to reach her. (Feb. 11, 2019, Hrg. Tr. 100:11-15)  Officers were heard on the police radio recording stating that they did not hear any noises coming from within the apartment and no one was answering the door. (Feb. 11, 2019, Hrg. Tr. 100:16-21)  Officers requested the dispatcher call the cell phone number of Ms. Puryear to observe whether they could hear the phone ringing inside the apartment. The dispatcher attempted to call Ms. Puryear several times, but the calls went straight to voicemail. Officers contacted Ms. Puryear's father and requested that he contact Ms. Puryear to verify her safety. (Feb. 11, 2019, Hrg. Tr. 35)  His attempts to contact her were also unfruitful. Officers made contact with a neighbors, one of which stated he did hear several loud banging noises (Feb. 11, 2019, Hrg. Tr. 74)   Officers attempted to locate a vehicle belonging to Ms. Puryear unsuccessfully. (Feb. 11, 2019, Hrg. Tr. 101) Officers visited the boutique owned by Ms. Puryear and observed it was closed and no was inside.  (Feb. 11, 2019, Hrg. Tr. 101:19-23) Officers Edmond, Sergeant Fisher and Ms. Nolan all testified that several attempts were made to contact Ms. Puyear to no avail. (Feb. 11, 2019, Hrg. Tr.35; 102)

Jadine Nolan, the leasing manager testified that she also attempted to contact Ms. Puryear. (Feb. 11, 2019, Hrg. Tr. 7: 11-12)  Ms. Nolan testified that she did not immediately provide a key to apartment 506 to officers when she arrived.  (Feb. 11, 2019, Hrg. Tr. P. 25:22-24)   She took preliminary steps to contact Ms. Puryear. (Feb. 11, 2019, Hrg. Tr. P. 16:1)  She was unable to reach Ms. Puryear. (Feb. 11, 2019, Hrg. Tr. 8: 8-9) She also attempted to contact Ms. Puryear's father. (Feb. 11, 2019, Hrg. Tr. 7: 18-22)  Ms. Nolan explained that she was unable to make contact Ms. Puryear. (Feb. 11, 2019, Hrg. Tr. 8:6-7) Ms. Nolan testified that she observed officers attempt

to make contact Ms. Puryear through the phone system on the front of the building and they were unsuccessful. (Feb. 11, 2019, Hrg. Tr. 8:15-21)

Officer Edmond testified that officers were concerned that due to the caller stating shots were fired in the apartment they were not sure if Ms. Puryear or the baby were deceased. There was a definite concern that someone was harmed in the apartment. (Feb. 11, 2019, Hrg. Tr. 102:14-18) After officers were unable to ensure the safety of Ms. Puryear they obtained a key from the leasing manager. (Feb. 11, 2019, Hrg. Tr. 103:9-13)

Officers made entry into the apartment and immediately observed Ms. Puryear walking toward the front door of the apartment. (Feb. 11, 2019, Hrg. Tr. 104) Officer Edmond indicated that Ms. Puryear was visibly shaken and appeared eager to get out of the apartment (Feb. 11, 2019, Hrg. Tr. 104:11-15) Officers entered the apartment and began a protective sweep. (Feb. 11, 2019, Hrg. Tr. 104:19-21) At that time they observed Defendant coming out of the bedroom and instructed him to get on the ground. (Feb. 11, 2019, Hrg. Tr. 104:22-23) Inside the apartment was also a minor child. (Feb. 11, 2019, Hrg. Tr. 105:16-18) Ms. Puryear was taken down the hall from the apartment to speak with officers. (Feb. 11, 2019, Hrg. Tr. 105:3-4) Officer Edmond testified that Ms. Puryear was crying, visibly shaken and upset. (Feb. 11, 2019, Hrg. Tr. 105:21-23) Ms. Puryear told officers that Defendant extended a gun behind him and fired multiple shots into an adjoining bedroom belonging to the minor child. (Feb. 11, 2019, Hrg. Tr. 106:15-19) Officers noted ballistic damage and ammunition in plain view throughout the apartment consistent with shots being fired in the dwelling. (Feb. 11, 2019, Hrg. Ex. 2-19).

Officer Edmond testified that she overheard Officer Klein ask Ms. Puryear where Defendant kept his firearms. (Feb. 11, 2019, Hrg. Tr. 107:13-15) Ms. Puryear instructed Officer Klein "to go into the bedroom and go into the right night stand, and they were in there." (Feb. 11,

2019, Hrg. Tr. 107:14-17) Officer Klein then proceeded into the apartment and retrieved two firearms from the right night stand drawer. (Feb. 11, 2019, Hrg. Tr. 107:23-108:1) Officer Klein informed Ms. Puryear that he retrieved the firearms. (Feb. 11, 2019, Hrg. Tr. 108:5-7) Ms. Puryear never objected to officers retrieving the firearms. (Feb. 11, 2019, Hrg. Tr. 108:8-10) In fact, Officer Edmonds testified that Ms. Puryear appeared relieved. (Feb. 11, 2019, Hrg. Tr. 108:11-12) Officer Edmond testified that no other area other than the night stand was searched. (Feb. 11, 2019, Hrg. Tr. 109:2-4) Defendant was placed under arrested on several charges. (Feb. 11, 2019, Hrg. Tr. 17)

## III.   ANALYSIS

### *A.* Standard For Withdrawal Of Guilty Plea

A defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal. Fed.R.Crim.P. 11(d)(2)(B). The defendant bears the burden of showing fair and just grounds for withdrawal. *United States v. Prior*, 654, 657 (8th Cir. 1997). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Ramirez-Hernandez,* 449 F.3d 824, 826 (8th Cir. 2006). If the district court determines the defendant has presented a fair and just reason to withdraw his plea, the Court may consider several other factors, such as whether the defendant asserts his legal innocence of the charge, the length of time between the plea and the motion to withdraw, and whether the government will be prejudiced by the withdrawal. *United States v. Murphy*, 572 F.3d 563, 568 (8th Cir. 2009). However, if a defendant does not present a fair and just reason for withdrawal of a guilty plea the court need not examine the other factors. *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998).

A guilty plea is a solemn act not to be set aside lightly. *United States v. Davis*, 583 F.3d 1081, 1089 (8th Cir. 2009). When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise. *United States v. Alvarado*, 615 F.3d 916, 920 (8th Cir. 2010).  Post-plea regrets or belated misgivings about the wisdom of entering the plea do not constitute fair and just reasons. *Id*.

### B.   Defendant Has Failed To Show A Fair And Just Reason To Withdraw His Guilty Plea

Defendant contends that there are two "fair and just reasons" for permitting him to withdraw his guilty plea.  First that the prosecutor engaged in prosecutorial misconduct. Specifically, defendant contends that the prosecutor committed a *Brady* violation by failing to disclose the death of Officer Alex Klein.  Second, defendant argues that prior counsel was ineffective.

#### 1.   *Prosecutorial Misconduct*

Defendant argues that his right to due process was violated as the prosecutor failed to disclose material evidence of Officer Alex Klein's death in violation of *Brady,* therefore providing a fair and just reason to withdraw his guilty plea.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* was expanded to establish that prosecutors have a duty to disclose impeachment and exculpatory evidence regardless of whether a specific request is made. *United States v. Bagley,* 473 U.S. 667, 676 (1985).  The burden to establish that a *Brady* violation occurred rests with the defendant. *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014).

The defendant's claim of prosecutorial misconduct based on *Brady* should be denied as *Brady* is not applicable in this case[1].  *Brady* requires that a prosecutor provide evidence that is exculpatory or impeaching to the defendant. The *Brady* court addressed the defendant's rights in the context of ensuring a "fair trial."  Whether *Brady* was applicable in instances in which a case was resolved by way of a guilty plea remained unanswered.  The Court has since partially resolved this issue as it has held that the Government is not required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. *United States v. Ruiz*, 536 U.S. 622, 623 (2002).  The *Ruiz* Court stated, "Although the Fifth and Sixth Amendments provide, as part of the Constitution's "fair trial" guarantee, that defendants have the right to receive exculpatory impeachment material from prosecutors, a defendant who pleads guilty forgoes a fair trial as well as various other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 623 (2002) (citing *Boykin v. Alabama,* 395 U.S. 238 (1969).

Federal courts are split on the issue of whether the Constitution requires a prosecutor to disclose exculpatory evidence prior to the entry of a guilty plea. In fact, the Eighth Circuit has been silent.  Thus the law regarding this issue remains unclear. Nevertheless this court need not consider this issue as *Brady* is not applicable in this instances. The fact that a witness dies is not subject to constitutional disclosure under *Brady*.  *Brady* requires that the prosecutor disclose "evidence" that is exculpatory. *Brady*, 373 U.S. 83.   The fact that Officer Klein is deceased is not evidence nor is the officer's death exculpatory. Because Officer Klein's death was not evidence in this case and does not tend to prove or disprove the defendant's guilt, the defendant has not established the existence of any exculpatory evidence the prosecutor failed to disclose.

---

[1] The prosecutor remained in compliance with Fed. R.Crim.Proc.16 as well as Jenks and Giglio throughout this case.

Assuming, arguendo, the court finds that the fact that the officer is deceased is exculpatory evidence, it must then decide if the Constitution requires production of such evidence prior to entry of a guilty plea.  If the court decides that production is not required, the defendant's claim to withdraw his guilty plea based on prosecutorial misconduct should be denied.  If the court finds that such production is required under the Constitution, then the court must perform the three-prong *Strickler* analysis.

To show a *Brady* prosecutorial misconduct violation, the defendant must establish that "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263 (1999). "Prejudice exists when the suppressed evidence is "material" for *Brady* purposes." *Banks v. Dretke*, 540 U.S. 668 (2004).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene,* 527 U.S. 263 (1999).

First, is the evidence at issue favorable to the accused? As previously stated, the fact that Officer Klein is deceased was not favorable to the defendant and in fact was not evidence at all. The defendant has failed to show how the fact that Officer Klein is deceased would serve to prove or disprove any fact or any element of any charges at issue in this case. Officer Klein died after falling from a balcony at his home.  His death in no way involved this defendant or this case. Therefore the fact is not evidence and is not exculpatory. Thus it is not favorable to the defendant.

The defendant argues that failure to disclose this information prior to the evidentiary hearing precluded the defendant from receiving a fair hearing as he planned to, in essence, impeach Officer Klein. Nevertheless, there is nothing about the fact that the officer is deceased nor the

circumstances surrounding his death that would give rise to any credibility issues in this case. Furthermore, if this fact is for the purpose of impeachment, per *Ruiz*, the government was not required to disclose such information.

Second, evidence was not suppressed by the government because the fact that the officer is deceased was not evidence in this case. Furthermore, during the February 11, 2019, Evidentiary Hearing on cross examination of Officer Mary Edmond, defense counsel asked the following:

"Q: We didn't call Officer Klein to testify. Where is Officer Klein?
A: Officer Klein is deceased." (See Feb. 11, 2019, Hr. Tr. 33:21-23).

Therefore the defendant was aware of the officer's death some seven months prior to any potential trial and his guilty plea on September 13, 2019. Consequently, there were no false statements or misrepresentations made by the government to the defendant at any point in this case including during plea negotiations to mislead the defendant regarding the availability of Officer Klein.

Third, prejudice did not ensue as there is not a reasonable probability that, had the fact been disclosed to the defense, the result of the change of plea hearing would have been different. Again, at the time of the change of plea hearing the defendant had known for seven months of the officer's death. Thus the proceeding would not have been different had he known because he did know. Likewise, based on the evidence presented at the evidentiary hearing there is no reasonable probability that this fact would have resulted in a different outcome of the evidentiary hearing.

Defendant asserts, without presenting or even alluding to one shred of evidence, that he planned to prove that the deceased officer knowingly made false statements and staged evidence. The record is quite clear that the officer in fact did neither. If such evidence exists, it is shocking that it was not be included with Defendant's motion. At the evidentiary hearing the defendant's

own witness, Ashley Puryear, testified that she told Officer Klein where the firearms were; that she was aware that Officer Klein located the firearms; that the firearms belonged to Defendant and that Defendant fired shots into their child's bedroom with said firearms.

Moreover the evidence is clear that the defense did not intend to call Officer Klein as a witness.  Defense counsel acknowledges, on the record, that they in fact chose not to call Officer Klein. Defense counsel stated, "We didn't call Officer Klein to testify." (See Feb. 11, 2019, Hr. Tr. 33:21-23).  After being told that Officer Klein was deceased, the defense did not stop the hearing, request a continuance or even mention a credibility issue regarding Officer Klein. Furthermore no such mentions were made in the defendant's post hearing brief or supplemental brief.  The defense did not intend to call Officer Klein because he would not have been a favorable witness for them. It is not reasonable to conclude that had the fact that the officer was deceased been known prior to the evidentiary hearing that there would have been a different outcome in either the evidentiary hearing or change of plea hearing. Defendant has failed to show that the fact that Officer Klein is deceased was favorable evidence to him, that the government suppressed the fact or that prejudice ensued. Thus the court must find that there is no prosecutorial misconduct violation per *Brady.*

### 2.  Ineffective assistance of counsel.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the effective assistance of counsel for his defense.   "However, assistance of counsel does not have to be perfect or free from error." *McMann v. Richardson,* 397 U.S. 759, 774 (1970). The Supreme Court held in *Hill v. Lockhart,* 474 U.S. 52 (1985), that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Defense counsel's performance can serve as the requisite fair and just reason for

withdrawal of a guilty plea only if the defendant shows that (1) counsel's performance fell below an objective standard of reasonableness or was deficient; and (2) that such a deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668 (1984). Prejudice in an ineffective assistance of counsel claim, means that, but for counsel's errors, a reasonable probability exists that the result would have been different. *Id.* The court must scrutinize counsel's conduct based on counsel's perspective at the time and eliminate the distorting effects of hindsight. *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Defendant asserts Attorney Jeff Goldfarb's counsel was ineffective in that he was ineffective in plea negotiations, failed to cite case law in the Motion to Suppress, failed to subpoena any witnesses for the evidentiary hearing, and failed to ascertain that a material witness (Officer Klein) was deceased.

### a. Deficient performance

The deficient performance prong requires the defendant to "show that his counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment" *United States v. Rice,* 449 F.3d 887, 897 (8th Cir.2006) (quoting *Strickland,* 466 U.S. at 687). *Rice* outlines two impediments to making a sufficient showing of deficient performance. First, "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id*. Second, "[t]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* If the defendant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance claim. *United States v. Walker,* 324 F.3d 1032, 1040 (8th Cir.2003).

Nothing in the record shows that Goldfarb's performance in this case fell below a reasonable range of competency.  Goldfarb's decision to refrain from subpoenaing Officer Klein was not an act of negligence but a conscious, reasonably informed strategic decision based on the fact that Officer Klein, even if alive, would have provided no evidence to support any of the defendant's claim. Furthermore, the defendant does not possess any information upon which Officer Klein could have been impeached. Moreover, Goldfarb may have anticipated that Officer Klein would be called by the prosecution in its case-in-chief, thus eliminating a need to subpoena him for the defense.  Defendant asserts that Goldfarb failed to subpoena any witnesses for the evidentiary hearing. However, Goldfarb requested a continuance of the January 11, 2019, evidentiary hearing until the defense witness, Ashley Puyear, could appear.  Ms. Puyear did in fact testify at the reset hearing on February 11, 2019. Goldfarb's failure to ascertain Officer Klein's death or subpoena any additional witnesses did not constitute deficient performance.

Defendant argues that Goldfarb was ineffective in plea negotiations because he did not convey an offer of 60 months to the Government thus his performance was deficient.  Goldfarb did in fact participate in plea negotiations with the government.  The government conveyed an offer of 10 years in this case on May 22, 2018.  Defendant declined the offer.  On January 3 and 11, 2019, the offer of 10 years was reiterate and would remain open until the Frye Hearing. The defendant declined the offer. It was clear that defendant wanted an evidentiary hearing based on his strong belief that the evidence in this case should be suppressed.

 On February 11, 2019, at the time of the Frye Hearing an offer of 60 months was placed on the record by Goldfarb. The government rejected that offer.  On February 12, 2019, after the suppression hearing, an offer of 165 months was extended by the government. Defendant declined the offer.  On June 25, 2019, defendant made an offer of 36 months to the government.

The government declined the offer.  On September 4, 2019, via mail and electronic service the government extended an offer of 165 months again.  Defendant rejected the offer stating he wanted a bench trial.  On September 9, 2019, the government agreed to the bench trial and requested an opportunity to meet with Defendant and counsel. On September 9, 2019, Goldfarb issued an offer of 135 months with the ability to retain appeal rights on the suppression issues. The counteroffer was rejected by the government. Goldfarb asked if the government would consider 165 with the right to appeal suppression issues. The government declined. Thereafter a meeting or reverse proffer of sorts with the government, Defendant and Goldfarb occurred. Defendant was allowed to ask the government any questions he wanted regarding the evidence, disposition of the case, guidelines, etc... Goldfarb was present the entire time. It must be noted that the defendant refused to participate in the initial reverse proffer requested by the government in December 2018. Mr. Goldfarb nevertheless came to our office to review the government's case file in January 2019, without defendant. Goldfarb's plea negotiations did not constitute deficient performance.

In addition to reviewing the government's discovery and listening to hundreds of jail calls Goldfarb submitted multiple motions and briefs on behalf of the defendant. Goldfarb began preparation for trial as evident by the decision to waive jury and review of stipulations and other notices from the government. The Motion to Suppress is not completely void of case law. Further the post hearing brief, supplemental brief, and objection to the R&R all provide a sufficient amount of case law. Goldfarb's citation of case law in the Motion to Suppress did not constitute deficient performance.

Defendant has not satisfied the first prong of the *Strickland* analysis. Because the "deficient performance" prong has not been satisfied the court need not examine the second

prong and must find that the defendant has not established that there was ineffective assistance of counsel. Consequently, the court must find that the defendant has not established a "fair and just reason" for withdrawal of his guilty plea based on a claim of ineffective assistance of counsel. Assuming, the court finds that there were errors in Goldfarb's performance causing a deficiency, errors by counsel, even if professionally unreasonable, does not necessarily require that a judgment be set aside. *Strickland,* 466 U.S. at 693. The defendant must show that he was prejudiced by the deficient performance. *Id.*

### b. Prejudice

In order to make the necessary showing of prejudice to support withdrawal of a guilty plea based on ineffective assistance of counsel the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. While Defendant now asserts ineffective assistance of counsel, he raised no concerns about his counsel's effectiveness with the Court at the change of plea hearing. At that hearing, Defendant testified, under oath, that he was satisfied with Goldfarb's services and had had the opportunity to fully discuss the case with him. The defendant makes no claims that Goldfarb was ineffective in regards to the change of plea hearing or presentation of the plea agreement.  In fact at the time of the change of plea hearing, defendant assured the court that he was satisfied with his representation.

> THE COURT: And are you satisfied with his representation of you in this case?
> THE DEFENDANT: I am.
> THE COURT: Is there anything you think your attorney should have done but hasn't done in representing you?
> THE DEFENDANT: No.
> THE COURT: Is there anything that you asked him to do that he failed or refused to do?
> THE DEFENDANT: No.
> THE COURT: To the extent you've had questions, has he answered those questions for you?
> THE DEFENDANT: He has

(See Sept. 13, 2019 Hrg. Tr. at 16:5-18)

The Defendant indicates that he believed that if he spoke out against counsel the government would penalize him by seeking to apply Armed Career Criminal (ACC) status. This is simply untrue.  The defendant spoke out in the February 9, 2019, hearing stating that he did not understand several things throughout the hearing so much so the court continued the hearing to give the defendant additional time to speak with Goldfarb.  During the continuance period, Defendant met with the government and was given the opportunity to ask any questions he wanted.  Further, Goldfarb was not Defendant's first but second attorney of record. Thus exemplifying when the defendant was unhappy with the services of an attorney he had no problem obtaining new counsel.

The government believed Defendant was an ACC. Based on the charges at the time of the plea negotiations, the defendant would have been facing a mandatory minimum of 15 years on counts one and two and a maximum sentence of life.  During the Frye Hearing the government explained that the defendant's guideline range would be between 262-327 months if he proceeded to trial and 188-235 months with acceptance. The government explained that at the conclusion of a trial it would seek a sentence between the range of between 262-327 months based on the guidelines. The defendant chose to accept the plea deal which resulted in the dismissal of two charges, the amendment of the two charges under which he would be considered ACC, and a recommendation of 165 months. Defendant had ample time to consider the offer as it had not changed since February 2019.  Furthermore the plea deal allowed the defendant to receive a sentence below the mandatory minimum he would have faced had he proceeded to trial and been found guilty.

The defendant has failed to establish that he was "prejudiced" because he has failed to show that but for any perceived errors by counsel he would not have pleaded guilty and would have insisted on going to trial. Thus he has failed to establish both the deficient performance and prejudice prongs of his claim of ineffective assistance of counsel. Therefore the court must find that defendant has not established a fair and just reason for withdrawal of his guilty plea based on a claim of ineffective assistance of counsel.

### C. Other Factors

Where a defendant has established a fair and just reason for withdrawal of a guilty plea, the court must also consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols,* 986 F.2d 1199, 1201 (8th Cir.1993).  Due to the defendant's failure to establish a fair and just reason, it is unnecessary for the court to consider the other factors for determining whether Defendant should be allowed to withdraw his guilty plea. However, we will briefly address the issues of defendant's innocence, the timing of his motion, and whether the prosecution will be prejudiced.

#### 1. Innocence

The defendant's argument of legal innocence is based on the notion that the evidence in this case should have been suppressed as there was no exigent circumstances. Exigent circumstances in this case existed. This issue has been well litigated.  The defendant was given an opportunity to present arguments in objection to the R&R to the District Court.  This court sustained the R&R and denied the defendant's motions. This is not the avenue by which the defendant can change the Courts mind regarding its decision. Further even if it were, the

defendant presents no additional facts upon which the court could change its position. The defendant has failed to show legal innocence.

### 2.   Time between guilty plea and motion to withdraw

The next factor we will examine regarding whether to set aside Defendant's guilty plea is the length of time between his guilty pleas and his motion to withdraw. The defendant entered the guilty plea on September 13, 2019 and subsequently filed the motion to withdraw approximately six months later on March 4, 2020. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom. *United States v. Fitzhugh,* 78 F.3d 1326, 1328 (8th Cir.). The Eighth Circuit has found that delays of as little as four months in bringing a motion to withdraw guilty plea have weighed against granting the motion. *United States v. Vallery,* 108 F.3d 155, 158 (8th Cir.1997). Thus the six month delay in this case should weigh against the court granting the motion to withdraw.

### 3.   Prejudice to the prosecution

The final factor to be examined is whether the prosecution would be prejudiced in allowing Defendant to withdraw his guilty plea. The government expended considerable resources in preparation of the initial trial. This included preparing exhibits, subpoenaing witnesses, preparing trial notices and stipulations. If the court were to allow Defendant to withdraw his plea the government would have to duplicate its prior efforts.  Further the memories of witnesses have likely faded requiring additional time to locate and prepare witnesses for trial. There were also issues of witness tampering in this case. If the defendant has continued his efforts to manipulate and influence witness testimony, it will take additional time to discover such actions and properly prepare in spite of it.  The prejudice to the prosecution of

expending the time and cost in preparing for trial further weighs against allowing withdrawal of his guilty pleas.

### III. CONCLUSION

The defendant's entire argument hinges on the outcome of the evidentiary hearing. He is using claims of prosecutorial misconduct and ineffective assistance of counsel in an attempt to appeal R&R Order. The defendant objected to the R&R and the district court sustained the R&R. He does not get another bite at the apple by filing these unsubstantiated allegations. If each of the accusations claimed by the defendant did not exists the outcome of the evidentiary hearing would have been no different.  There is no law to support his position that there were no exigent circumstances.  Even if the defendant were successful in withdrawing his plea, he would not get an opportunity to re-litigate the suppression issues. The question that has to be answered is whether, but for the allegations, there would have been a different outcome regarding the change of plea.  The answer is no. The defendant has failed to demonstrate a fair and just reason to withdraw his guilty plea by way of prosecutorial misconduct or ineffective assistance of counsel. Wherefore the defendant's Motion to Withdraw Guilty Plea must be denied.

Respectfully submitted:

JEFFREY B. JENSEN
United States Attorney

 /s/ Linda Lane
LINDA R. LANE, # 0011451IA
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2020 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Attorney for Defendant.

/s/ Linda Lane
LINDA R. LANE, # 0011451IA
Assistant United States Attorney